CONNORIZED MUSIC CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7179. Promulgated June 7, 1927.

Cost of goods sold for the year 1920 as computed by the Commissioner increased in the total amount of $16,958.73, representing purchases during that year.

*Arthur Conrow* for the petitioner.
*William H. Lawder, Esq.,* for the respondent.

This proceeding is for the redetermination of income and profits taxes for the years 1920 and 1921. The Commissioner asserts that for 1920 there is a deficiency of $17,111.07, and for 1921 a deficiency of $1,410.37, making a total deficiency of $18,521.44. The petitioner alleges that the Commissioner erred in that he failed (1) to include certain expenditures in computing the cost of goods sold, and (2) to allow a credit of 8 per cent of invested capital in computing the excess-profits tax.

FINDINGS OF FACT.

Petitioner is a New York corporation with its principal office at New York City, and is engaged in the manufacture of player-piano

rolls. In computing cost of goods sold for each of the years 1920 and 1921 it deducted from the total amount paid for goods during the year the amount owing for goods as at the beginning of the taxable year and added to the figure thus ascertained the amount owing for goods as at the close of the taxable year.

It kept a sales ledger on the accrual basis and reported sales for each of the taxable years in accordance therewith. The Commissioner adopted the gross sales returned by petitioner in his computation of its income for each of the years under review. Petitioner did not keep a purchase ledger, but kept a purchase record book in which it entered payments made for merchandise.

Some of the invoices for goods purchased were lost and in computing the cost of goods sold for each of the years 1920 and 1921 the Commissioner used only those items appearing on the purchase record for which the petitioner could produce supporting bills. The amount allowed by the Commissioner was $24,503.12. The actual cost was $36,296.06.

Checks showing payments for merchandise were produced at the hearing by the petitioner as follows:

| Check No. | Date | Amount | Check No. | Date | Amount |
|---|---|---|---|---|---|
| 10842 | Feb. 10, 1920 | $2, 655. 51 | 11418 | June 12, 1920 | $958. 65 |
| 10889 | Feb. 12, 1920 | 775. 00 | 11439 | July 13, 1920 | 2, 737. 01 |
| 10997 | Mar. 10, 1920 | 2, 394. 61 | 11881 | Dec. 14, 1920 | 461. 28 |
| 11069 | Mar. 15, 1920 | 536. 73 | | | |
| 11129 | Apr. 10, 1920 | 4, 439. 94 | Total | | 16, 958. 73 |
| 11341 | June 10, 1920 | 2, 000. 00 | | | |

Petitioner did not have invoices to support any of the above checks.

Expenditures for freight and cartage were entered by petitioner in its cash book and in a number of instances such expenditures were entered as incidental expenses. Estimated expenditures for freight and cartage were included by petitioner in computing cost of goods sold for each of the years 1920 and 1921. The Commissioner allowed only those items for freight and cartage for which supporting vouchers could be shown.

The petitioner did not produce at the hearing either its sales ledger, its purchase record book, or its cash book.

The Commissioner computed the excess-profits tax for each of the years 1920 and 1921 under the limitation provisions of section 302 of the Revenue Acts of 1918 and 1921, respectively.

OPINION.

SMITH: The second allegation of error will be disposed of first. No evidence having been submitted by the petitioner from which the Board could determine the amount of its invested capital, the action of the Commissioner in computing its excess-profits tax for

the years 1920 and 1921 under the provisions of section 302 of the Revenue Acts of 1918 and 1921, respectively, is approved.

To support the first allegation of error, the petitioner submitted certain invoices, checks, and check stubs. It claimed that the invoices covered advertising expense incurred in 1920, but paid for in 1921, and merchandise purchased in 1921, some of which was paid for in 1922, but none of which appeared on its books for 1921. It also claimed that the Commissioner allowed the advertising expense as a deduction in 1921, whereas it should have been allowed in 1920. The petitioner, however, did not submit any evidence to show what the Commissioner's action was with respect to the items covered by such invoices; whether he allowed any or all of the items and, if so, whether the allowance was made in computing income for 1920 or for 1921. Neither did it submit its books nor any memoranda drawn from its books and records at the time it prepared its returns which might have reflected the composition of its accounts, or its financial status. Consequently, we can not allow any of the items covered by the invoices in this redetermination.

Testimony relative to the canceled checks presented by petitioner through its witness Conrow was adduced at the hearing as follows:

The MEMBER. What are all of those canceled checks? You have more than two there?

Mr. CONROW. Oh, yes; there are a number of them. They run up here monthly, there are six checks here from the same company, running from February 1st to July, 1920.

The MEMBER. Most of those that were paid in 1920 were for goods purchased in 1920?

Mr. CONROW. Yes, sir; those after January were for goods purchased for 1920, in 1920 but some of those for November and December of 1919 were paid in January, 1920. We discount these bills and paid those for December in January, and those for November in December.

Mr. LAWDER. If your Honor, please, it seems as though, of necessity, this proceeding is just a trifle informal and I would like to ask a question: Are you prepared to state under oath at this time that none of these checks which you show here and introduce are not in the amounts already paid for purchases appearing on your book?

A. They do appear on our books.

Q. Are you prepared to say absolutely at this time that none of those checks have been allowed as purchases by the revenue agent?

Mr. CONROW. Not on the amended return.

Mr. LAWDER. How do you know?

Mr. CONROW. Because I presented the invoices to him and had no invoices for them.

Mr. LAWDER. Are those checks for which you have no invoices?

Mr. CONROW. Yes, sir.

Mr. LAWDER. Are you stating at this time that you are entitled to more for purchases in computing the cost of goods for 1920 than was allowed originally?

Mr. CONROW. Yes, sir.

108346°—28——17

Mr. LAWDER. How do you know some of these checks were not included in the original computation made by the revenue agent?

Mr. CONROW. These particular checks were allowed in the original return because they were on our books as being paid.

Mr. LAWDER. And then, upon a supplemental and different examination they were thrown out because they were not supported by invoices?

Mr. CONROW. Yes; and the reason they were not supported by invoices was because their sales records were either lost or destroyed, and when it came to 1924 we could not obtain the bills covering these amounts.

We are convinced, from the foregoing testimony, that the checks represent sums expended by the petitioner during the year 1920 for goods purchased during that year for which the Commissioner did not give it credit in computing the cost of goods sold, and that the cost of goods sold as computed by the Commissioner should be increased in the total amount of $16,958.73. The petitioner claimed that it paid freight and cartage in each year which was not allowed as a deduction by the respondent, but presented no evidence relative thereto.

The propriety of the Commissioner's placing the petitioner upon the accrual basis with respect to sales and upon the cash basis with respect to purchases might well be questioned, but the question was not raised by the pleadings and we can not determine from the record that he erred in that regard.

> *Judgment will be entered in accordance with the above decision, on 20 days' notice, under Rule 50.*